UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80593-CIV-MARRA/JOHNSON

STEVEN E. LEBER, AS TRUSTEE OF
THE STEVEN E. LEBER CHARITABLE
REMAINDER UNITRUST,

    Plaintiff,

v.

PAUL J. KONIGSBERG and
KONIGSBERG, WOLF & CO., P.C.,

    Defendants.
_____/

## ORDER AND OPINION DENYING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment in Regard to Count II of the Complaint Alleging Breach of Fiduciary Duty [DE 34]. The Court has carefully considered the motion, response, reply and is otherwise fully advised in the premises.

**Introduction**

The Plaintiff, Steven E. Leber ("Leber"), is the grantor and trustee of the Steven E. Leber Charitable Remainder Unitrust ("Trust"). Leber Aff. 38-1, ¶ 2. The Defendant, Paul Konigsberg ("Konigsberg"), is a certified public accountant and the named partner of Konigsberg Wolf & Co., P.C. ("Konigsberg Wolf"). Compl. ¶ 3; Konigsberg 8/5/10 Depo. at 3. Defendant Konigsberg Wolf is a certified public accounting firm. Compl. ¶ 6. The Complaint contains one count alleging negligence, and one count alleging breach of fiduciary duty against each defendant. DE 1. The

Complaint alleges that Konigsberg solicited and facilitated the investment by the Trust of all its assets with Bernard Madoff ("Madoff"); that Konigsberg represented to Leber in 2001 that he would personally supervise, monitor and provide due diligence as to the Trust's account with Madoff and provide advisory services as to the Trust's assets; that as of November 30, 2008, Madoff represented that the account value of the Trust was $4,001,519.39; and that in January 2009, Leber first learned that Madoff was a fraud and that no investments had been made by Madoff as to the Trust's accounts.  Compl. ¶¶ 9, 10, 17, 21, 25-27.  Plaintiff made demand upon Defendants for damages resulting from their negligence and breach of fiduciary duty and requested payment of $4,001,519.39.

Defendants move for summary judgment asking the Court to declare that New York substantive law applies to this lawsuit, and to grant summary judgment in their favor on Plaintiff's breach of fiduciary duties claim.  As to the conflict of laws question, Plaintiff agrees that New York substantive law should apply in this lawsuit as a result of Florida's most significant relationship test.  *See Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980).  Accordingly, the only issue remaining is whether New York law permits a claim for breach of fiduciary duty against an accountant under the facts of this case.

**Standard of Review**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed.R.Civ.P. 56.  All evidence and all factual inferences reasonably drawn from the evidence are viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).  Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court.  Fed.R.Civ.P. 56.

## Discussion

Defendants assert that under New York law, accountants do not owe fiduciary duties to their clients, and therefore, summary judgment as to Plaintiff's claim for breach of fiduciary duties against Defendants is appropriate.  Defendants' contention is generally true ("general rule").  *Friedman v. Anderson*, 803 N.Y.S.2d 514 (N.Y. App. Div.  2005); *VTech Holdings Ltd. v. PricewaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) ("In New York, the accountant-client relationship does not generally give rise to a fiduciary relationship absent special circumstances," such as the accountant's commission of affirmative fraud or illegal acts); *accord, Block v. Razorfish, Inc.*, 121 F. Supp. 2d 401, 403 (S.D.N.Y. 2000).

Defendants argue that the only exception to the general rule that the accountant-client relationship does not give rise to a fiduciary relationship occurs when the plaintiff alleges and proves that the accountant engaged in affirmative

fraud or illegal acts.  In their reply, Defendants also assert that Plaintiff argues for the first time in his response that Defendants were acting not only as Plaintiff's accountant, but also as the Plaintiff's financial advisor, and that it was the Defendants' negligent financial advise, as opposed to accounting work, which caused the Plaintiff's purported damages.  Defendants state that "[t]his new theory of liability by the Plaintiff is improper and should not be considered by the Court in ruling on Defendants' Motion for Summary Judgment."  DE 39 at 2.

**Accountant's Fiduciary Status**

Defendants claim that the "*only exception* to the rule that accountants are not fiduciaries to their clients occurs when the Plaintiff alleges that the accountant engages in affirmative fraud or illegal acts."  DE 34 at 17 (emphasis supplied).  Defendants then set forth five cases to support this proposition:  *Friedman v. Anderson*, 803 N.Y.S.2d 514 (N.Y. App. Div.  2005) ("*Friedman*");  *Block v. Razorfish, Inc.*, 121 F. Supp. 2d 401, 403 (S.D.N.Y. 2000)(" *Block*"); *Lavin v. Kaufman, Greenhut, Lebowitz & Forman,* 640 N.Y.S.2d 57 (N.Y. App. Div. 1996) ("*Lavin*"); *Nate B & Frances Spingold Found. v. Wallin, Simon, Black & Co.*, 585 N.Y.S.2d 416 (N.Y. App. Div. 1992) (*rev'd* on separate grounds) ("*Nate B*"); and finally, *Kanev v. Turk*, 590 N.Y.S.2d 211 (N.Y. App. Div. 1992) ("*Kanev*").  Plaintiff responds that Defendants misstate the law and that this "inaccurate assertion" cannot be found in the cases cited.  The Court has reviewed the cases cited by both sides and agrees that Defendants are incorrect in their assertion regarding the "only exception" to the

general rule.

In *Friedman,* a client brought an action alleging that his accountant improperly recommended a professional money manager to him.  The trial court dismissed some of the client's claims, and the client appealed.  The appellate court held that an accountant could be held liable for professional negligence and bad faith in connection with its recommendation of professional money manager, but the accountant's recommendation of the professional money manager to the client was not fraudulent.  *Friedman* stands for the proposition that the existence of a negligence claim does not create a fiduciary relationship between an accountant and his client.  The court found that, absent evidence that the accountant made the recommendation with the intent to deceive or deprive the client of his financial earnings, a claim for breach of fiduciary duty was properly dismissed.  *Friedman* does not state that the *only exception* to the rule that accountants are not fiduciaries to their clients occurs when a plaintiff alleges that the accountant engaged in affirmative fraud or illegal acts.  *Friedman,* 803 N.Y.S.2d 514 (N.Y. App. Div. 2005).

In *Block,* the Court found that allegations of disclosure of confidential information, while unprofessional, did not give rise to a legal cause of action for breach of fiduciary duty.  While repeating the general rule, *Block* does not state that the *only exception* to the rule that accountants are not fiduciaries to their clients occurs when a plaintiff alleges that the accountant engaged in affirmative fraud or illegal acts.  *Block,* 121 F. Supp. 2d 401, 403 (S.D.N.Y. 2000).

In *Lavin*, the court ruled in a one page decision that a cause of action for breach of fiduciary duty should not have been dismissed against plaintiff's accountant.  Nowhere does the court express that the "only exception" to the general rule occurs when a plaintiff alleges the accountant engaged in affirmative fraud or illegal acts.  *Lavin*, 640 N.Y.S. 2d 57 (N.Y. App. Div. 1996).

*Nate B* permitted a cause of action against an accountant for breach of fiduciary duty to stand because the complaint alleged knowledge and concealment of illegal acts, diversion of funds, and failure to withdraw in face of a conflict of interest.  *Nate B* does not state that it is only under these circumstances that such an action may proceed.  *Nate B*, 585 N.Y.S.2d 416 (N.Y. App. Div. 1992).

And finally, in *Kanev*, the court ruled that a cause of action for breach of fiduciary duty against an accountant should not have been dismissed.  In *Kanev*, it was alleged, among other things, that the accountant knew of the borrower's insolvency and did not disclose it to his client.  As with the other four cases cited by Defendants, *Kanev* states that a breach of fiduciary duty claim is appropriate when fraud or other illegal conduct is properly alleged, but it does not support the proposition that the "only exception" to the general rule exists when a plaintiff alleges the accountant engaged in affirmative fraud and illegal acts.  *Kanev*, 590 N.Y.S.2d 211 (N.Y. App. Div. 1992).

Whether Plaintiff will succeed in his cause of action for breach of fiduciary duty against Defendants requires a fact-specific inquiry into the nature of the

relationship between Leber and Konigsberg.  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 662 (S.D.N.Y. 2007) (it is the actual nature of the relationship between the parties giving rise to the causes of action, rather than semantics, that determines whether the accountant owed plaintiff a fiduciary duty).  Defendants do not cite to any evidence that demonstrates that their relationship to Plaintiff was strictly an ordinary accountant-client relationship.

"A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity on another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another."  *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 289 (S.D.N.Y. 1995).  Whether a relationship is fiduciary in nature must be determined on the basis of the services agreed to by the parties.  *Northeast General Corp. v. Wellington Advertising,* 82 N.Y.2d 158 (N.Y. 1993).  Generally, "where parties have entered into a contract, courts look to that agreement to discover ... the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency."  *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19-20 (N.Y. 2005) quoting *Northeast Gen. Corp.*, 82 N.Y.2d at 160; *Brinsights, LLC v. Charming Shoppes of Delaware, Inc.*, 2008 WL 216969, *8 (S.D.N.Y 2008).  In this case, no contract or retainer agreement has been supplied so we do not have the insight such an agreement might provide.

Plaintiff has submitted an affidavit, however, that clearly places a genuine issue of material fact in dispute regarding the fiduciary nature of the parties relationship.  Leber avers, in part, as follows:

8.  At the meeting, Konigsberg advised that he could provide financial advice to the CRUT[1] and talked about how he and his firm provided financial advisory services and helped place clients in certain investments.

9.  Specifically, Konigsberg represented that an investment by the CRUT through Konigsberg into Bernard L. Madoff Investment Securities ("Madoff") would be the appropriate investment for the CRUT.

10. Konigsberg advised that if the CRUT invested as he recommended that he would personally supervise, monitor and provide due diligence as to the CRUT's account, and provide advisory services and analysis of the CRUT's assets.

13. I would not have invested all of the CRUT's funds but for the representation by Konigsberg as my financial advisor that he would personally supervise, monitor and provide due diligence as to the CRUT's account with Madoff.  Konigsberg promised to provide analysis and advisory services as to the CRUT's assets.  I wanted to make sure that the charities I pledged money to through the CRUT were well taken care of.

16. Konigsberg solicited all of the CRUT's assets through him into Madoff by making these representations as to his continued supervision, due diligence and oversight of the CRUT's investment.

20. At every stage, Konigsberg supervised and monitored the investment by the CRUT as the CRUT's financial advisor.

22. In November 2001, I received a call from Konigsberg that we should meet.  I arranged to meet Konigsberg near his office in New York.  At the meeting, Konigsberg advised that he thought that I had understood

---

[1] Steven E. Leber Charitable Remainder Unitrust.

>       that as a result of his role as a financial advisor to the CRUT that it was expected that the CRUT would retain Konigsberg Wolf as its tax accountants as well.
>
> 23.   Konigsberg advised that he had been supervising, monitoring, and providing due diligence as to the CRUT's account as he had promised and that I should be very happy with the results obtained from his advice. Konigsberg indicated that I must hire Konigsberg Wolf in order to get the proper analysis of the Madoff account of the CRUT and that if this was done our prior relationship could continue. It was clear that if I didn't hire Konigsberg Wolf, that Konigsberg would no longer be the CRUT's financial advisor and that the CRUT's account at Madoff would be jeopardized.
>
> 25.   Konigsberg remained as the CRUT's financial advisor, with all of the duties and responsibilities initially agreed upon in October 1998 as heretofore set forth and as the CRUT's accountant until December 23, 2008, which was the last preparation by Konigsberg of the CRUT's tax return.
>
> 28.   Attached hereto as composite Exhibit "3" is a representative sample of Konigsberg's analysis of the CRUT's Madoff account for the year 2006, together with a representative sample bill from Konigsberg dated February 17, 2004, indicating that he was charging not only for "tax analysis" but also for analysis of the monthly reports of Madoff for the CRUT.

Steven Leber Affidavit, DE 38-1.

Under circumstances such as those listed above, a breach of fiduciary duty claim against an accountant pursuant to New York law may proceed. For instance, in *Tonzi v. Nichols*, 899 N.Y.S.2d 63 (N.Y. App. Div. 2009), the plaintiff alleged that her accountant, while acting as her financial advisor, wrongfully induced her to purchase viatical settlements. Both the plaintiff and defendant brought motions for summary judgment on the issue of whether there was a breach of fiduciary duty. The *Tonzi*

Court held that the accountant "may be found to have assumed additional duties of care when acting as a financial advisor."  The court cited *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461 (N.Y. App. Div. 2007); *Brooks v. Key Trust Co. Nat. Assn.*, 26 A.D.3d 628 (N.Y. App. Div. 2006); *Lynch v. McQueen,* 30 A.D.2d 790 (N.Y. App. Div. 2003); *Fortino v. Hersh,* 307 A.D.2d 899 (N.Y. App. Div. 2003); *Rasmussen v. A.C.T. Environmental Services, Inc.*, 292 A.D.2d 710 (N.Y. App. Div. 2002); *Davis v. CCF Capital Corp.*, 277 A.D.2d 342 (N.Y. App. Div. 2000); *Scalp & Blade, Inc. v. Advest*, 281 A.D.2d 882 (N.Y. App. Div. 2001).  *Tonzi v. Nichols*, 2009 WL 2922910, *3 (N.Y. App. Div. 2009).

   *Tonzi* is not the only case where a cause of action was sustained against an accountant for breach of fiduciary duty where the accountant provided financial advice, supervision, and analysis of investments.  In *L.H.P. Realty Co., Inc. v. Rich*, 2001 WL 1537744, *3 (N.Y. Sup. Ct. 2001), the plaintiff sufficiently stated a cause of action for breach of fiduciary duty where it was alleged that plaintiff had placed total trust and reliance upon an accountant's investment advice, and that the accountant concealed pertinent information about those investments, such as the nature of the risk involved.  "Here, given the defendants superior knowledge regarding plaintiff's investment with Mintus, the fact that the investment was made through the defendants, and the fact that they assured LHP that its principal would not be put at risk, plaintiffs have stated a valid cause of action for breach of fiduciary duty and/or professional malpractice as against the defendants.  Issues of fact exist as to whether

the defendants were negligent in not ascertaining the risk involved in investing with Mintus." *Id*. In the case at bar, Plaintiff's allegations that Defendants assumed the additional duties of acting as a financial advisor present a question of fact whether there was a higher level of trust than normally present in the average accountant-client relationship. *EBC I*, 5 N.Y.3d at 19; *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 71 (N.Y. App. Div. 2006) (as a general rule, accountants are not fiduciaries as to their clients except where the accountants are directly involved in managing the client's investments).

**Negligent Financial Advice**

Defendants' argument that Plaintiff is asserting a new theory of liability in his response is rejected. Count II, alleging breach of fiduciary duty, repeats and "realigns" paragraphs 1 through 29. DE 1. Paragraph 6 states, "included in Konigsberg Wolf's services are the introduction of clients to 'potential partners and investors,' and providing planning and advisory services for their client's investments." Paragraph 8 states, "Konigsberg facilitated the investment of money from individuals, corporations, trust, and charities, with Madoff." Paragraph 9 states, "Leber met with Konigsberg who solicited the investment by the Trust of its funds with Madoff." Paragraph 21 states, "Konigsberg represented to Leber in 2001 that he would personally supervise, monitor and provide due diligence as to the Trust's account with Madoff and provide advisory services as to the Trust's assets."

**Conclusion**

Under New York law, genuine issues of material fact as to whether Leber's relationship with his accountant was merely that of accountant-client, or whether there was a fiduciary relationship. As a result, summary judgment on Leber's claims against Defendants for breach of fiduciary duty cannot be granted. *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655 (S.D.N.Y. 2007). Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment in Regard to Count II of the Complaint Alleging Breach of Fiduciary Duty [DE 34] is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of December, 2010.

                                                  KENNETH A. MARRA
                                                  United States District Judge

copies to:

All counsel of record